```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

United States of America,      )
                               )
          Plaintiff,           )  Case No. 1:05-CR-45
                               )
     vs.                       )
                               )
Wilson Moss Graham, et al.,    )
                               )
          Defendants.          )

O R D E R

This matter is before the Court on a joint motion to dismiss the indictment filed by Defendants Homer Richardson and Robert West (Doc. No. 187).  Defendants move to dismiss the indictment on the grounds that their rights under the Speedy Trial Act have been violated.  For the reasons that follow, Defendants' motion is well-taken and is **GRANTED.**

The Speedy Trial Act requires that a defendant be brought to trial within 70 days of the filing of the indictment or the defendant's first appearance before a judicial officer, whichever last occurs.  18 U.S.C. § 3161(c)(1).  In a multiple defendant case where no severance has been granted, the speedy trial clock commences when the last defendant makes his first appearance before a judicial officer.  United States v. Cope, 312 F.3d 757, 776-77 (6th Cir. 2002).  If the defendant is not brought to trial within 70 days, the indictment must be dismissed on motion of the defendant.  18 U.S.C. § 3162(a)(2).  The speedy

1

trial clock is tolled, however, for delay attributable to certain specific circumstances.  18 U.S.C. § 3161(h)(1) - (6).  The speedy trial clock will also be tolled on a motion for a continuance if the trial court determines in the ends of justice that the need for continuance outweighs the defendant's and public's interest in a speedy trial.  18 U.S.C. § 3161(h)(8).  In this case, Richardson and West argue that the indictment must be dismissed because more than 70 non-excludable days have elapsed from the speedy trial clock but they have yet to be brought to trial.

On April 7, 2005, the grand jury returned an indictment charging Richardson, West, and co-Defendants Wilson Moss Graham, Mitchell Graham, Barton Richardson, and Robert Welti with various criminal tax offenses related to their promotion and personal use of business trusts marketed by the Aegis Company, which are alleged abusive tax shelters.  The indictment charged each of the Defendants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  Additionally, as is relevant here, the indictment charged Richardson with four counts of aiding in the filing of false income tax returns, in violation of 26 U.S.C. § 7206(2), and three counts of filing a false income tax return, in violation of 26 U.S.C. § 7206(1).  West was also charged with four counts of aiding in the filing of false income tax returns, in violation of 26 U.S.C. § 7206(2).

2

West was the last defendant to make his first appearance before a judicial officer, on May 24, 2005. Doc. No. 57. The speedy trial clock would not have commenced in any case before May 24, 2005. Therefore, at least all of the time between April 7, 2005 and May 24, 2005 is excluded from the speedy trial calculation. By this time, however, on May 3, 2005, the government filed a motion for the Court to declare the case complex pursuant to 18 U.S.C. § 3161(h)(8)(A) and (B)(i), (ii), (iv). Doc. No. 53. The complexity of the case is due in large measure to the unprecedented volume of discovery turned over by the government - approximately 1.5 million documents, 300 videotapes, 500 recorded conversations, 90 hard drives of computers, and 3,000 diskettes. Id. at 2.

Additionally, on May 16, 2005, the government filed a notice that trial counsel for Richardson and co-Defendant Robert Welti potentially had a conflict of interest in their representation of these defendants and requested a hearing for the Court to inquire into the issue. Doc. No. 55. Briefing was completed on this motion on June 20, 2005. Doc. No. 71. The Court held a hearing on the motion on June 21, 2005. Doc. No. 72. On June 30, 2005, the Court issued an order (Doc. No. 74) which resolved the conflict of interest issue and declared the case to be complex. Accordingly, all of the time between West's first appearance, and the resolution of the government's two

motions is excludable.  18 U.S.C. § 3161(h)(1)(F)(delay resulting from any pretrial motion through the conclusion of the hearing on or other prompt disposition of the motion excluded).

> In making the complex case finding, the Court stated:
>
> [T]he Court finds that a continuance of this trial until December 5, 2006 is in the interests of justice and outweighs the Defendants' and public's interest in a speedy trial.  This is a complex conspiracy case and the number of documents and the volume of audio and video tapes for the parties to sift through are unprecedented in the Court's experience. Indeed, at the hearing counsel seemed unsure as to the best way to even begin to tackle the chore of organizing the discovery they are about to receive.  Clearly the need to organize and review the discovery and to prepare the case in a proper and adequate fashion outweighs the competing interests in a speedy trial. Therefore, the government's motion to declare this a complex case is well-taken and is **GRANTED**. Accordingly, the Court finds that the Speedy Trial clock is tolled in this matter until December 5, 2006.

Doc. No. 74, at 8.  December 5, 2006 was expected to be the revised date to commence trial.[1]  Based on this order, clearly all of the time between June 30, 2005 and December 5, 2006 is excluded from the speedy trial computation.  At oral argument, Defendants conceded that the Court's designation of the case as complex and tolling of the speedy trial clock through December 5, 2006 were appropriate.  Trial is now scheduled to begin on June 17, 2008.  Accordingly, the real question presented by Defendants' motion is whether more than 70 non-excludable delays

---

[1] The Court also set other deadlines for production of discovery and filing pre-trial and dispositive motions.

4

have elapsed between December 6, 2006 and the present.

By March 23, 2006, it was apparent to all counsel that the trial date of December 5, 2006 was untenable and would have to be extended because the government had only recently produced to the Defendants computer hard drives with the 1.5 million documents on them.  Additionally, the government had recently notified the Defendants that it was about to produce an additional eighteen boxes of documents.  See Doc. No. 194 (transcript of March 23, 2006 status conference).  Counsel for all Defendants indicated that they had just begun review of the documents produced on the computer hard drives.  In light of those developments, the Court vacated the December 5, 2006 trial date and put the matter over for another status conference on June 23, 2006.  (Doc. No. 112).  The Court did not make a specific finding that vacating the December 5, 2006 trial date was necessary to serve the ends of justice nor was it asked to do so.

By the June 23, 2006 status conference, defense counsel did not have any better handle on coping with the voluminous discovery provided by the government.  At least two defense counsel stated that setting a new trial date at that time was not feasible.  See Doc. No. 128 (Transcript of conference) at 12, 17. The Court set the matter over for a further status conference on August 18, 2006, but again did not make any ends of justice

findings nor was it asked to do so.

At the August 18, 2006 conference, the discussion revolved around obtaining software which would enable the Defendants to search the database in order to more efficiently review for pertinent documents.  As a result of that conference, the Court established new deadlines for filing discovery motions and motions to suppress and to dismiss the indictment.  Doc. No. 124.  The Court, however, did not establish a new trial date and there were no findings that a continuance was in the interests of justice nor was it asked to do so.

The Court held another status conference with the parties on March 22, 2007, which was prompted by motions filed by Defendants Welti and Graham to vacate the discovery deadlines and extend the time for filing discovery motions. Doc. Nos. 132-134. On March 23, 2007, the Court entered an order vacating the discovery deadlines set by the August 2006 order, ordered the parties to meet and confer concerning the government's trial exhibits, and set the matter for a status conference on May 29, 2007.  Doc. No.  149.  Again, the Court did not establish a new trial date and there were no ends of justice findings entered, nor were such findings requested.

The Court held another status conference with the parties on May 29, 2007.  This conference resulted in another status conference being scheduled for August 30, 2007.  The Court

6

later moved the status conference to September 13, 2007. The September 13, 2007 conference resulted in setting another status conference on October 26, 2007. The Court did not establish a new trial date at any of these conferences and there were no ends of justice findings entered nor was it asked to do so.

The Court finally established a trial date of June 17, 2008 at the October 26, 2007 conference. Doc. No. 172. Again, however, there were no ends of justice findings entered with this order nor were any such findings requested.

As indicated above, the issue is whether more than 70 non-excludable days have elapsed after December 5, 2006. Because the Court did not enter ends of justice findings, either written or orally, on any orders after the order designating the case as complex, there is at least a prima facie showing of a Speedy Trial Act violation.

The Court notes that between December 6, 2006 and January 30, 2007, there were no motions filed or pending to be resolved. Thus, 56 days apparently elapsed from the clock during this period. At this point, only 14 days remained to be expended. However, a complete analysis of the entire docket is not necessary to demonstrate that well over 14 non-excludable days elapsed between January 30, 2007 and the present. The Court notes that there is apparently no excludable time between October 3, 2007 and October 25, 2007, a period of 23 days. There were

motions pending concerning payment of Criminal Justice Act fees for paralegal services and appointment of experts, but these motions were filed in April and May 2007 and were referred to the Magistrate Judge for disposition on July 27, 2007.  Pursuant to 18 U.S.C. § 3161(h)(1)(J), only 30 days for resolution of these motions is excludable.  There is another large block of apparently unexcludable time between November 2, 2007 and March 6, 2008 when no motions were pending and there were no other proceedings concerning the Defendants.  This period alone is a 125 day span of apparently non-excludable time.

  To reiterate, then, there has at least been a prima facie showing of a Speedy Trial Act violation.  Therefore, the Court is required to dismiss the indictment unless, at a minimum, the time spans just discussed are excludable days.  There may, of course, be other days not referenced as of yet, which would ultimately have a bearing on the Speedy Trial calculation. Nevertheless, it is also readily apparent that for any of these days to be excluded, it will have to be because the continuances authorized by the Court starting in March 2006 were required in the interests of justice.  In other words, if each of the continuances was justified in the interests of justice, then no time has elapsed from the Speedy Trial clock and the case will proceed or, as stated, there has been a violation and the indictment must be dismissed.

As indicated throughout the recitation of the procedural history of the case, after designating the case as complex, the Court never made a specific finding, orally or in writing, that the continuances met the ends of justice requirements for tolling the Speedy Trial clock.  That is not necessarily a problem.  The district court is not required to set forth its ends of justice findings at the time it grants the continuance.  <u>United States v. Crane</u>, 776 F.2d 600, 606 (6th Cir. 1985).  Recently, the Supreme Court stated that "at the very least the Act implies that those findings must be put forth in the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)."  <u>Zedner v. United States</u>, 547 U.S. 489, 507 (2006).  Despite what might first appear to be a laissez-faire attitude of the superior courts concerning the timing of entering ends of justice findings, it is evident that the appellate courts are wary of post hoc justifications for tolling the Speedy Trial Act:

> If the judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act,
>
> . . . .
>
> A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable-delay continuance before the delay occurred.

Crane, 776 F.2d at 606 (quoting United States v. Janik, 723 F.2d 537, 544-45 (7th Cir. 1983)(Posner, J.)).  Thus, the record must indicate that the trial judge contemporaneously balanced the ends of justice factors before granting the continuance.  See United States v. Richmond, 735 F.2d 208, 216 (6th Cir. 1984).

Finally, although decided on different facts, it seems obvious from the Zedner decision that granting an open-ended continuance is not appropriate under the Speedy Trial Act.  In Zedner, the Court held that a defendant may not prospectively waive his Speedy Trial rights for "all time."  547 U.S. at 503.  An open-ended continuance is similar to an "all time" waiver in that it leaves the trial court and the parties to their own devices as to when and whether the case is to be brought to trial.  Moreover, the ends of justice are never be served by delaying a trial indefinitely.

In this case, the problem, as the parties well know, is and has been discovery.  The discovery itself breaks down into three separate problems.  One, the volume of discovery in this case quite simply has been unmanageable for defense counsel.  Two, like a restless volcano, the government periodically spews forth new discovery, which adds to defense counsels' already monumental due diligence responsibilities.  Three, the discovery itself has often been tainted or incomplete.  For example, during oral argument, counsel for Defendants stated that computer hard

10

drives produced by the government were riddled with bugs and viruses and that tape recordings and transcriptions were missing or incomplete. Indeed, it appears that these issues may require yet another continuance of the trial if the indictment is not dismissed.[2]

This has put the Defendants in an untenable position. They have not been able to effectively prepare for trial because of all the issues surrounding discovery, but despite the numerous continuances in this matter, by all appearances the case is not much closer to being ready for trial now than it was in December of 2006.[3] Hence, they have faced a lengthy delay in resolving the charges filed against them. There does not seem to be a reasonable time on the horizon within which this case might be brought to trial. Therefore, since December 5, 2006, the Court has essentially continued this trial indefinitely. On that basis alone, Defendants' Speedy Trial rights have been violated.

Moreover, based on Zedner, the Court does not believe that its original designation of the case as complex carries through until the case is resolved. It is clear that the

---

[2] Government counsel concede that of 300 audio tapes related to this case, only 50 audio tapes had been produced to defense counsel by the date of the hearing on this motion, May 12, 2008, a date which is slightly more than four weeks before the trial now set for June 17, 2008.

[3] The Court notes that to date, the government has not filed an any lists of trial witnesses or exhibits.

11

original order contemplated that the case would be brought to trial no later than December 5, 2006 and that only the time through that date would be excluded from the Speedy Trial clock. That order clearly did not contemplate that the trial would be continued again on at least four separate other occasions. Accordingly, the original complex case designation cannot be used to toll the Speedy Trial clock through to the present.

Finally, the record does not support a finding that each of the continuances were justified in the interests of justice, although an argument could be made that as stated above the causes of the original designation of the case as complex had continued unabated. The Court vacated the original trial date in March 2006 and did not establish a new trial date until October 2007. This left the case in limbo for 17 months. There are no contemporaneous indications in the record that the Court balanced the ends of justice factors in continuing the trial for this period of time. Nor did the parties ask the Court to make such findings. See Richmond, 735 F.2d at 216 (finding that district court did not grant continuance in the ends of justice because the record failed to reflect that the judge balanced the ends of justice with the defendant's and public's interest in a speedy trial).

Accordingly, the Court concludes after December 5, 2006, the continuances were not granted after a proper balancing

12

of the ends of justice factors, on the record, and that, therefore, Defendant Richardson's and Defendant West's Speedy Trial Act rights have been violated.  The Speedy Trial Act does not admit of any hindsight or weighing of fault in deciding this matter.  Therefore, the indictment as to these Defendants must be dismissed, the only issue being whether dismissal should be with or without prejudice.  In answering this question, district courts should consider the seriousness of the offense, the facts and circumstances of the case which led to dismissal, and the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice.  Richmond, 735 F.2d at 217.

The Defendants have been charged with Class D and Class E felonies, which are the least serious felonies in the federal hierarchy.  See 18 U.S.C. § 3581(b).  On the other hand, the alleged conduct has the effect of impeding the very important function of the government of properly assessing and collecting income taxes.  Therefore, despite the statutory classification of these offenses, the alleged criminal conduct has serious consequences for the operation of the government.  Accordingly, overall the Court views the offenses charged as being serious. See United States v. Pierce, 17 F.3d 146, 148-49 (6th Cir. 1994)(affirming district court's conclusion that tax evasion offenses are serious offenses for purposes of the Speedy Trial

Act because of "the important duty to obey and the need to enforce compliance with the tax laws."). This factor weighs in favor of dismissal without prejudice.

With regard to the facts and circumstances leading to dismissal, as discussed, the problem in this case has been the volume of discovery produced by the government. Defendants do not allege, however, and the Court does not find, that the government acted in bad faith or with any purpose to deprive the Defendants of a speedy trial. There simply has not been an efficient way for any of the parties to review the mass of documents produced in this case.

The Court would be less than forthcoming if it did not assume an appropriate share of the responsibility for the procedural predicament in which this case stands. With 20/20 hindsight, having learned from its mistakes, the Court chooses to share some retrospective thoughts about this state of affairs. Initially, the Court notes that in a matter of this complexity and magnitude, the government cannot be permitted to remain inert in the face of large volumes of unsorted discovery materials. Nor can the government be permitted to refuse to share databases and search engines with defense counsel. The taxpayers should not be required to fund two separate means for managing and searching electronically recordable data - one for the government and one for the defense. Secondly, electronic discovery must be

14

provided in virus-free, non-corrupt form.  Thirdly, the Court should establish deadlines for government production of discovery.  Fourthly, defense counsel bears some responsibility for not bringing problems encountered in the course of discovery to the attention of the Court in a prompt manner.

No discovery production should be permitted beyond a fair and reasonable deadline sufficiently in advance of the trial date to afford defense counsel adequate time to review and analyze the discovery materials except upon a showing of good cause.  The Court may need to bar the use of late produced discovery at trial.  The government cannot be permitted to essentially unilaterally control the date of trial by dribbling out discovery in a haphazard and disorganized manner.

As a general policy, the courts favor resolution of cases upon their merits rather than upon procedural technicalities.  Unfortunately, the delays in this case have denied the Defendants and the public of a prompt and fair adjudication of these charges on the merits.  Consequently, should this case be re-indicted, the Court will be more acutely aware of the potential pitfalls to be avoided.  The Court must shoulder some of the blame for the delay in this case, thus, the facts and circumstances indicate that the indictment should be dismissed without prejudice.  Compare United States v. Green,

15

Nos. 90-5249, 90-5250, 1990 WL 161597, at *5 (6th Cir. Oct. 23, 1990)(dismissal of indictment without prejudice was appropriate because the trial court was responsible for the delay).

The final factor is the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. With regard to this factor, the Sixth Circuit has stated:

> The purpose of the Speedy Trial Act is not only to protect a defendant's constitutional right to a speedy trial, but also to serve the public interest in bringing prompt criminal proceedings. Whenever the government-for whatever reasons-falls short of meeting the Act's requirements, the administration of justice is adversely affected. While not all violations of the Speedy Trial Act warrant a dismissal with prejudice, the purposes of the Act would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements.

United States v. Moss, 217 F.3d 426, 432 (6th Cir. 2000)(internal quotation case citations and quotation marks omitted). In this analysis, the trial court should also consider the prejudice to the defendant caused by the delay. Id.

The Defendants have suffered prejudice as a result of the delay. The indictment and subsequent delay has clearly exacted an emotional toll on the Defendants. Moreover, the length of the delay in this case is presumptively prejudicial. See id. at 431-32. Defendants have, however, been on pretrial release, so their liberty has not been completely restrained. This factor lessens the prejudice to the Defendants. See United

16

States v. O'Dell, 247 F.3d 655, 672 (6th Cir. 2001)(noting that fewer speedy trial concerns are implicated when the defendant is not detained during the delay). On the whole, however, it is clear that the Defendants have been prejudiced by the delay, and this factor, therefore, favors dismissal with prejudice. See Moss, 217 F.3d at 432 ("[I]nordinate delay between public charge and trial, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.")(quoting Barker v. Wingo, 407 U.S. 514, 537 (1972))(internal ellipses and quotation marks omitted).

In addition to prejudice to the defendant, the trial court should consider whether the government engaged in prosecutorial misconduct which must be deterred to ensure compliance with the Speedy Trial Act. United States v. Howard, 218 F.3d 556, 562 (6th Cir. 2000). As stated earlier, the Court does not find that the government acted in bad faith, although in retrospect discovery could have and should have been handled differently. The Court, however, must also share in this failing. Deterrence of government misconduct, however, is not a

17

consideration in this case.[4]  Accordingly, this factor weighs in favor of dismissal without prejudice.

In sum, the offenses are serious and the government is not entirely at fault for the delay.  The Defendants have suffered prejudice as a result of the delay, but deterrence of government misconduct is not a consideration in this case.  The Court finds that the balance of factors weighs in favor of dismissal of the indictment without prejudice.  Compare with United States v. Kottmyer, 961 F.2d 569, 573 (6th Cir. 1992)("The first factor, the seriousness of the offense, and the third factor, the lack of prejudice or a need to deter future neglect, weigh in favor of the government.  The second factor, the government's neglect, weighs in favor of the defendants, but, without evidence of intentional delays or a pattern of such conduct, the court did not abuse its discretion by allowing reprosecution.").

Accordingly, the indictment at to Defendants Homer

---

[4] Defense counsel also shares some responsibility for the delays by failing to bring discovery problems to the Court's attention sooner.  For example, although the government produced computer hard drives to the Defendants two years ago, the Court did not learn that they were infected with viruses until the Defendants filed their motion to dismiss under the Speedy Trial Act.  Additionally, the lack of cooperation at the Chicago United States Attorney's Office in failing to allow Defendants access to relevant discovery has apparently been an ongoing problem as well, but again Defendants did not bring this to the Court's attention until they filed the motion to dismiss.  See Doc. No. 187-2, Arthur Aff. ¶¶ 3-4, 6.

Richardson and Robert West is **DISMISSED WITHOUT PREJUDICE.**

       **IT IS SO ORDERED**

Date May 16, 2008                         s/Sandra S. Beckwith
                                         Sandra S. Beckwith, Chief Judge
                                          United States District Court